723 So.2d 460 (1998)
Tanya ROBERTSON, Individually and on Behalf of Minor Brendan Colby Bernard
v.
NORTHSHORE REGIONAL MEDICAL CENTER, Dr. Jeanne Eddington, and Dr. Robert Muller.
No. 97 CA 2068.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
*461 Louis A. Gerdes, Joseph W. Thomas, New Orleans, Attorneys for Plaintiffs-Appellants, Tanya Robertson and Brendan Colby Bernard.
James R. Strain, Jr., Pamela L. Hershey, Slidell, Attorneys for Defendant-Appellee, Robert Muller, M.D.
BEFORE: LeBLANC, FOGG, and PARRO, JJ.
PARRO, J.
Tanya Robertson, individually and on behalf of her minor son, Brendan Colby Bernard, appeals the trial court's summary judgment in favor of Dr. Robert Muller, dismissing her medical malpractice petition *462 against him, with prejudice. For the following reasons, we reverse and remand.

FACTUAL AND PROCEDURAL HISTORY
This action originated as a medical malpractice complaint filed by Ms. Robertson with the Patient's Compensation Fund in September 1990. In that complaint, she alleged that Dr. Robert Muller, an obstetrician-gynecologist, was negligent in the care and treatment rendered to her and her son, Brendan, in connection with his birth in September 1989, causing Brendan to suffer nerve damage to his shoulder. The complaint also named NorthShore Regional Medical Center and Dr. Jeanne Eddington. To facilitate discovery, NorthShore filed a petition with the Twenty-second Judicial District Court for the Parish of St. Tammany, pursuant to LSA-R.S. 40:1299.47(D)(4). Following discovery, a medical review panel was convened to review the allegations and found unanimously that Dr. Muller, Dr. Eddington, and NorthShore did not fail to meet the applicable standard of care.
Ms. Robertson then filed an "Amended Petition" in the Twenty-second Judicial District Court, under the same suit number which had been assigned to the discovery proceedings. NorthShore filed a peremptory exception raising the objection of no cause of action, on the grounds that the discovery proceeding did not allow any such cause of action; the exception was sustained by the trial court. On appeal to this court, that judgment was reversed and the case was remanded for further proceedings. Robertson v. Northshore Regional Medical Center, 93-1375 (La.App. 1st Cir.10/7/94), 645 So.2d 727. The petition was eventually re-allotted and assigned a new docket number.
In April 1996, Dr. Muller answered the petition and propounded a set of interrogatories to the plaintiff, which included a request for the name and address of any medical person who had indicated that Dr. Muller had not met the required standard of care in his treatment of Ms. Robertson and Brendan, and a request for the names, addresses, and specialties of any other expert witnesses the plaintiff might use at trial. The interrogatories were not answered, and in June 1996, Dr. Muller filed a motion to compel responses. Immediately before the scheduled hearing on the motion on August 12, 1996, plaintiff's counsel produced a set of answers to the interrogatories. Those answers stated that Ms. Robertson did not yet have a physician to advise her concerning the standard of care applicable to Dr. Muller, nor did she have any expert witnesses to testify against him, but also stated that she would supplement her answers when that information was obtained. The trial court ordered Ms. Robertson to provide a full and complete response concerning the physician expert within thirty days, and to respond concerning any other experts as soon as that information became available.
NorthShore had also filed a motion to compel responses to its unanswered interrogatories, and also received a set of answers right before the hearing. In those answers, Ms. Robertson listed Dr. Howard Cohn of Washington, D.C., as a potential expert witness with respect to the hospital's negligence. However, at the hearing, plaintiff's counsel admitted Dr. Cohn was just in the process of reviewing the case and had not yet expressed any opinion. Therefore, in addition to ordering complete responses, the trial court ordered Dr. Cohn's name stricken from the answers. The judgment on the motions to compel also stated that "the failure of plaintiff to respond as ordered above may subject plaintiff to further sanctions of this Court, including, but not limited to, dismissal of this claim, with prejudice."
No supplemental answers were filed or provided to the defendants during the months following the hearing and the court's judgment. The plaintiff did not ask the court for additional time within which to provide answers or comply with the court's order. Dr. Muller had issued a second set of interrogatories to the plaintiff on August 26, 1996, which also went unanswered for several months. Accordingly, on December 2, 1996, Dr. Muller filed a motion to compel answers to the second set of interrogatories, a motion for sanctions or dismissal for plaintiff's failure to comply with the court's order concerning the first set of interrogatories, and a *463 motion for summary judgment. NorthShore also filed a motion for summary judgment. In support of their motions for summary judgment, both defendants submitted a copy of the opinion and reasons for decision of the medical review panel, plus portions of the record, including the defendants' interrogatories, the plaintiff's incomplete responses, and the court's judgment on the defendants' motions to compel.
The motions for summary judgment were heard on January 27, 1997. Ms. Robertson's attorneys did not appear at the hearing, and no opposition to the motions was filed before the hearing. NorthShore's counsel advised the court that plaintiff's attorneys had told him they had no opposition to its motion for summary judgment. After hearing a very brief statement of the issues from the defendants' attorneys, the court orally granted both motions for summary judgment, dismissing all of the plaintiff's claims against NorthShore and Dr. Muller with prejudice. The judgment in favor of NorthShore was signed January 27, 1997, and was not appealed.
After the hearing on the motions for summary judgment, but before the judgment in favor of Dr. Muller was signed, Ms. Robertson's attorneys filed an opposition to Dr. Muller's motion, accompanied by a letter to the court apologizing for being late and asking that her opposition be considered. Attached to the opposition memorandum was a handwritten report in the form of a letter from Dr. Cohn dated January 6, 1997. Ms. Robertson also filed supplemental answers to Dr. Muller's first set of interrogatories, stating Dr. Cohn would be her only expert and would testify at trial concerning Dr. Muller's breach of the standard of care. Without commenting on this late opposition and discovery response, the trial court signed a judgment in favor of Dr. Muller on February 19, 1997, dismissing Ms. Robertson's claims, with prejudice. Ms. Robertson appealed only this judgment.[1]
Because her opposition, her answers to interrogatories, and Dr. Cohn's report were submitted to the court before the judgment was signed, Ms. Robertson claims on appeal that it was error for the court to summarily dismiss her complaint, with prejudice. She also contends the court erred in granting the summary judgment in favor of Dr. Muller, because Dr. Cohn's report created an issue of material fact concerning Dr. Muller's breach of the standard of care, and alternatively, because she is not required to have an expert in order to sustain her burden of proof at the trial of a medical malpractice claim.

APPLICABLE LAW AND STANDARD OF REVIEW

Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern the trial judge's consideration of whether a summary judgment is appropriate. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152, 1155. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The summary judgment procedure is favored and shall be construed to accomplish the just, speedy, and inexpensive determination of actions. LSA-C.C.P. art. 966(A)(2).
The initial burden of proof is on the mover to show that no genuine issue of material fact exists. LSA-C.C.P. art. 966(C)(2). However, once the mover has made a prima facie showing that the motion should be granted, if the non-movant bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that material factual issues remain. LSA-C.C.P. art. 966(C)(2); Hayes v. Autin, 96-287 (La.App. 3rd Cir.12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41; J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754. The adverse party may serve opposing affidavits *464 prior to the date of the hearing. LSA-C.C.P. art. 966(B); Vardaman v. Baker Ctr., Inc., 96-2611 (La.App. 1st Cir.3/13/98), 711 So.2d 727, 730.
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts that would be admissible in evidence, and shall show that the affiant is competent to testify to the matters stated therein. LSA-C.C.P. art. 967. A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality on summary judgment to be given weight in determining whether or not there remain genuine issues of material fact. Murphy v. L & L Marine Transp., Inc., 97-33 (La.App. 5th Cir.5/28/97), 695 So.2d 1045, 1048. An attachment to a memorandum is not properly before the court on a motion for summary judgment and should not be considered in resolving the motion. State v. Exxon Corp., 95-2501 (La.App. 1st Cir.6/28/96), 676 So.2d 783, 787. Unless the motion has been made and supported by affidavits, together with sworn or certified copies of all papers or documents referred to, or depositions or answers to interrogatories, LSA-C.C.P. art. 967 does not shift the burden to the adverse party to set forth specific facts showing that there is a genuine issue for trial. Kennington v. H. Blume Johnson, Inc., 94-0744 (La.7/1/94), 638 So.2d 1066, 1067.
In medical malpractice cases, the medical review panel is a body of experts assembled to evaluate the plaintiff's claim and to provide the courts and the parties with an expert opinion. Derouen v. Kolb, 397 So.2d 791, 794-95 (La.1981). While facts recorded by an expert through personal observation or examination may be admissible for purposes of summary judgment, the opinions and beliefs of an expert, even though derived from personal observation or examination and based upon specialized training or experience, are not the type of personal knowledge contemplated by LSA-C.C.P. art. 967 and may not be used to support summary judgment. Pope v. Younger Bros., Inc., 96-1604 (La.App. 1st Cir.5/9/97), 693 So.2d 1287, 1289; Miceli v. Armstrong World Indus., 96-1134 (La.App. 1st Cir.3/27/97), 691 So.2d 283, 289, writs denied, 97-1090, 97-1110 (La.6/13/97), 695 So.2d 985, 695 So.2d 980.
However, LSA-R.S. 40:1299.47(H) states that any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law. Jurisprudence from other Louisiana appellate courts indicates that the opinion and reasons of the medical review panel are generally accepted as admissible evidence in support of a motion for summary judgment in a medical malpractice suit. See, e.g., Alex v. Dr. X, 96-1196 (La.App.3rd Cir.3/5/97), 692 So.2d 499, 503; Guillory v. Dr. X, 96-85 (La.App. 3rd Cir.8/28/96), 679 So.2d 1004, 1009; Venable v. Dr. X, 95-1634 (La.App. 3rd Cir.4/3/96), 671 So.2d 1249, 1252; Taplin v. Lupin, 97-1058 (La.App. 4th Cir.10/1/97), 700 So.2d 1160, 1162-63; Richoux v. Tulane Medical Center, 617 So.2d 13, 16 (La.App. 4th Cir.1993). See also Gardner v. Louisiana State Univ. Medical Ctr. in Shreveport, 29,946 (La.App. 2nd Cir.10/29/97), 702 So.2d 53, 56, and jurisprudence discussed therein. However, this issue has not been addressed in a published opinion of this court.

Medical Malpractice
In suits alleging medical malpractice, the plaintiff must prove the applicable standard of care, the breach of that standard, and that the substandard care caused an injury that the plaintiff otherwise would not have suffered. LSA-R.S. 9:2794(A); Byrd v. State, Dep't of Pub. Safety and Corrections, 93-2765 (La.5/23/94), 637 So.2d 114, 122; Hoot v. Woman's Hosp. Found., 96-1136 (La. App. 1st Cir.3/27/97), 691 So.2d 786, 789, writ denied, 97-1651 (La.10/3/97), 701 So.2d 209. Opinions from medical experts are generally necessary to determine both the applicable standard of care and whether that standard was breached. Lefort v. Venable, 95-2345 (La.App. 1st Cir.6/28/96), 676 So.2d 218, 221. However, if a defendant physician or a defense expert testifies regarding the standard of care, and the objective evidence is such that a trier of fact can infer negligence from the facts, the plaintiff may not need an expert witness to prevail in a medical malpractice action. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, *465 1230. For instance, expert testimony to establish a breach of the standard of care is unnecessary when a physician does an obviously negligent act from which lay persons can infer negligence, such as fracturing a leg during an examination, amputating the wrong arm, carelessly dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body. LeBlanc v. Krupkin, 555 So.2d 600, 603 (La.App. 1st Cir.1989), writ denied, 558 So.2d 603 (La.1990); Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713, 719 (La.1986).

Discovery Sanctions
Under LSA-C.C.P. art. 1471, the trial court may impose sanctions for a party's failure to obey the court's order to provide discovery, including dismissal of the action or proceeding or rendering a judgment by default against the disobedient party. LSA-C. C.P. art. 1471(3). However, the courts have generally reserved these draconian penalties for extreme circumstances, or those in which the client, as well as the attorney, is at fault. See Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203, and cases cited therein.
Nevertheless, summary judgment may be granted when the petitioner fails to show, in response to discovery requests and a properly supported motion for summary judgment, that expert testimony is available to support a claim of medical malpractice, when such testimony would be necessary to establish the elements of the claim. See Taplin, 700 So.2d 1160; Richoux, 617 So.2d 13; Fortenberry v. Berthier, 503 So.2d 596 (La.App. 4th Cir.1987); Alex, 692 So.2d 499; Guillory, 679 So.2d 1004; Venable, 671 So.2d 1249; Smith v. MacArthur Surgical Clinic, 610 So.2d 245 (La.App. 3rd Cir.1992); Gardner, 702 So.2d 53.

APPLICATION OF LAW TO FACTS
This lawsuit stems from medical treatment of Ms. Robertson and her son during his birth in September 1989. During the birth process, Brendan experienced a shoulder dystocia, which allegedly caused some degree of permanent nerve damage and physical deformity. Dr. Muller was the attending obstetrician, standing in for Dr. Eddington, Ms. Robertson's regular physician. This claim does not involve such obvious circumstances that the fact finder could infer negligence from the facts.[2] Accordingly, to prove the elements of medical malpractice in this case, Ms. Robertson would need another obstetrician who could review the medical records and other factual evidence, and then explain to the court what the applicable standard of care was and why something that was done or not done by Dr. Muller fell below that standard of care and caused Brendan's injury. Before Dr. Muller filed his motion for summary judgment, Ms. Robertson and her attorneys had over seven years to find a physician to evaluate this malpractice claim. Yet, despite the defendants' repeated requests for information concerning such an expert, and ignoring the court's order to provide that information, she did not obtain the assistance of a qualified medical specialist until sometime in 1996.
Ms. Robertson and her attorneys would like to characterize the court's action in this case as a discovery sanction. Dismissal of a claimant's lawsuit is a very harsh sanction, and its imposition by a trial court is only justified in very unusual circumstances. Were this merely a dismissal, brought on by the plaintiff's failure to comply with the court's discovery order, that argument may have merit.
However, the situation before this court does not involve a discovery sanction, although Dr. Muller had requested such a sanction in another motion. The trial court granted a summary judgment, and to evaluate that decision, this court must use the same criteria that governed the trial court's consideration of whether a summary judgment was appropriate. It was only appropriate if there was no genuine issue of material fact, and the mover was entitled to judgment as a matter of law. If we determine that Dr. Muller submitted sufficient evidence to make *466 a prima facie showing that the motion should be granted, then, since Ms. Robertson bore the burden of proof on the issue of his malpractice, the burden shifted to her to present evidence demonstrating that material factual issues remained.
Accordingly, the initial inquiry is whether Dr. Muller submitted sufficient evidence to establish his prima facie case. Dr. Muller's motion was supported with his interrogatories, the plaintiff's incomplete responses, and the court's judgment on his motion to compel. These discovery pleadings demonstrate only that, at the time the motion for summary judgment was heard, the plaintiff had not provided the name of an expert witness to testify on her behalf. This evidence alone is not sufficient to establish the prima facie case. Dr. Muller's motion was also supported by a photocopy of the opinion and reasons of the medical review panel, which stated that he had not breached the applicable standard of care.[3] The photocopy of the medical review panel's opinion which was submitted in support of Dr. Muller's motion for summary judgment was not certified, was not accompanied by an affidavit, and was not sworn to in any way. A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality on summary judgment to be given weight in determining whether or not there remain genuine issues of material fact. Murphy, 695 So.2d at 1048. Unless the motion for summary judgment is supported by affidavits, together with sworn or certified copies of all papers or documents referred to, LSA-C.C.P. art. 967 does not shift the burden to the adverse party to set forth specific facts showing that there is a genuine issue for trial. Kennington, 638 So.2d at 1067. Accordingly, the burden never shifted to Ms. Robertson.[4]
Because Dr. Muller failed to submit evidence sufficient to establish a prima facie case that his treatment of Ms. Robertson and her son met the applicable standard of care, the motion for summary judgment should not have been granted by the trial court.

CONCLUSION
For the above reasons, we reverse the judgment of the trial court, and remand this case for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] For some reason. Dr. Eddington did not answer the complaint until February 20, 1997, so the plaintiff's claims against her are still pending in the trial court.
[2] For examples of the varying opinions of medical experts concerning the applicable standard of care and the occurrence of shoulder dystocia during the birth process, see Descant v. Administrators of Tulane Educ. Fund, 95-2127 (La.App. 4th Cir.1/21/98), 706 So.2d 618, and Stein v. Insurance Corp. of America, 566 So.2d 1114 (La. App. 2nd Cir.1990), writ denied, 569 So.2d 984 (La.1990).
[3] This court has generally followed the rule that expressions of an expert's opinion are inadmissible to support a motion for summary judgment. However, several other circuits have interpreted the language of LSA-R.S. 40:1299.47(H), that reports of the medical review panel shall be admissible in "any action subsequently brought by the claimant in a court of law," as requiring those reports to be admissible in support of a motion for summary judgment. This potentially creates a procedural quagmire for the medical malpractice claimant. If, as in this case, the medical review panel opinion states the physician defendant did not breach the applicable standard of care, and if this report must be admissible in support of the defendant's motion for summary judgment, the burden shifts to the plaintiff to demonstrate the existence of a genuine issue of material fact. In most cases, this burden could only be met by contrary opinion, testimony from another medical professional. But if opinion testimony is not admissible to support or oppose a motion for summary judgment, the plaintiff usually will not be able to meet that burden.

However, there may be avenues other than those utilized by the other appellate courts in interpreting the meaning and effect of LSA-R.S. 40:1299.47(H). For example, perhaps LSA-R.S. 40:1299.47(H) and the pertinent summary judgment laws can be read together to conclude that no conflict exists; rather, the language of LSA-R.S. 40:1299.47(H) does not extend the admissibility of a report by a medical review panel to use in summary judgment proceedings. The more far-reaching possibility that expert opinion evidence should be admissible in all summary judgment litigation must also be considered in the appropriate case. Either of these avenues would avoid the problem of allowing one party the use of expert opinion evidence on a motion for summary judgment, while declining the use of that evidence to the other party. In light of our ruling concerning the form in which the medical review panel opinion was presented in this case, we do not reach a conclusion on this broader evidentiary issue.
[4] Of course, if the burden had shifted to Ms. Robertson, the unsworn, handwritten letter report of Dr. Cohn submitted in support of her opposition to the motion would, for the same reasons, have been insufficient.