768 So.2d 57 (2000)
Donald B. and Edith CALHOUN
v.
HOFFMAN-LA ROCHE, INC.
No. 98 CA 2770.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
Opinion Granting Rehearing For Limited Purpose March 31, 2000.
*59 Damon J. Baldone, Houma, for Plaintiffs/Appellants, Donald and Edith Calhoun.
William F. Bologna, New Orleans, for Defendant/Appellee, Hoffman-La Roche, Inc.
Before: CARTER, LeBLANC, and PETTIGREW, JJ.
CARTER, J.
This is an appeal from a trial court judgment granting a motion for summary judgment in favor of a drug manufacturer in a products liability action.

FACTS
On February 17, 1995, plaintiff, Donald Calhoun, sought treatment from Dr. F.J. Graffagnino for a slow urinary stream. Dr. Graffagnino diagnosed Mr. Calhoun with a fibrous meatal stenosis of severe nature, but found that Mr. Calhoun had a normal prostate and an essentially normal urinalysis. Dr. Graffagnino recommended that the meatal stenosis be surgically corrected and that Mr. Calhoun undergo a urinary tract evaluation.
On February 22, 1995, Dr. Graffagnino performed an outpatient surgical procedure on Mr. Calhoun to correct the meatal stenosis and evaluate the urinary tract. After the procedure, Dr. Graffagnino directed his nurse to give Mr. Calhoun sixty milligrams of Toradol. Shortly thereafter, Mr. Calhoun experienced renal failure. As a result of the renal failure, Mr. Calhoun underwent dialysis for three weeks. Dr. Graffagnino opined that the renal failure was caused by the injection of Toradol.

PROCEDURAL HISTORY
On February 16, 1996, Donald Calhoun and his wife, Edith Calhoun, filed suit against Hoffman-La Roche, Inc. (Hoffman), the manufacturer of Toradol, alleging that Toradol was unreasonably dangerous in construction and composition, unreasonably dangerous in design, unreasonably dangerous because an adequate warning had not been provided to the treating physicians or Mr. Calhoun, and unreasonably dangerous because it did not conform to an express warranty by the manufacturer. In its answer to the petition, Hoffman asserted several defenses, one of which was that the Calhouns' claims were barred by the "learned intermediary" doctrine.[1]
In April 1998, Hoffman filed a motion for summary judgment. In its motion and supporting memorandum, Hoffman again contended that the Calhouns' claims were barred in their entirety under the "learned intermediary" doctrine. Hoffman attached the affidavit of Dr. Michael Carter, the Director of Hoffman's Department of Drug Safety. According to his affidavit, Dr. Carter had experience with and personal knowledge of the regulatory process whereby Toradol was ultimately approved by the federal Food and Drug Administration (FDA) for distribution to the public as a prescription drug. According to Dr. Carter's affidavit, the package insert for Toradol included the following warnings:
Renal Effects: TORADOL and its metabolites are eliminated primarily by the kidneys, which, in patients with reduced creatinine clearance, will result in diminished clearance of the drug (see CLINICAL PHARMACOLOGY). Therefore, TORADOL should be used with caution in patients with impaired renal function (see DOSAGE AND ADMINISTRATION) *60 and such patients should be followed closely. With the use of TORADOL, there have been reports of acute renal failure, nephritis, and nephrotic syndrome.
Because patients with underlying renal insufficiency are at increased risk of developing acute renal failure, the risks and benefits should be assessed prior to giving TORADOL to these patients. Hence, in patients with moderately elevated serum creatinine, it is recommended that the daily dose of TORADOL IV/IM be reduced by half, not to exceed 60 mg/day. TORADOL is contraindicated in patients with serum creatinine, concentrations indicating advanced renal impairment (see contraindications).
Dr. Carter attested that this insert was approved by the FDA for inclusion as a specific warning on the package insert for Toradol. Additionally, according to Dr. Carter, all of the pertinent information in the package insert is compiled and reflected in the entry contained in the Physician's Desk Reference (PDR) for Toradol, and the PDR is distributed to all doctors within the medical industry, free of charge. It is undisputed that Dr. Graffagnino had read the package insert referenced in the affidavit, and that Dr. Graffagnino had access to the PDR that contained the same information as that provided in the package insert.
Based on this affidavit and the content of the package insert, Hoffman argued that the warning about the possibility of renal failure was adequate as a matter of law. Thus, Hoffman asserted that there was no genuine issue of material fact that Dr. Graffagnino, the prescribing physician, was adequately warned of the risk of renal failure, and that all of the claims asserted by the Calhouns in their petition were barred by the "learned intermediary" doctrine.
The Calhouns filed an opposition to Hoffman's motion for summary judgment and attached an affidavit executed by Dr. Graffagnino. In the affidavit, Dr. Graffagnino stated that while he was aware that Toradol could cause problems with kidney function, he was not warned by the literature or otherwise that a single sixty milligram dose of Toradol could cause renal failure. The Calhouns argued that this statement by Dr. Graffagnino, as the prescribing physician, created an issue of fact regarding the adequacy of the warning, thereby precluding the application of the "learned intermediary" doctrine and making summary judgment improper.
Hoffman filed a reply memorandum contesting the Calhouns' argument that the subjective opinion of the treating physician that the warning is inadequate controls the manufacturer's obligation to warn of side effects. Instead, Hoffman contended that the adequacy of the warning, and specifically, whether the insert and/or PDR entry that is approved and mandated by the FDA, included an adequate warning regarding the claimed adverse reaction, was a question of law
The trial court held that the "learned intermediary" doctrine applied to the case, that there was an adequate warning in the package insert for Toradol, and that Dr. Graffagnino was informed concerning the possibility of renal failure associated with the use of Toradol. Thus, the trial court granted summary judgment in favor of Hoffman. The Calhouns appealed the trial court judgement, arguing that there were genuine issues of material fact that precluded the grant of summary judgment.

MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment *61 as a matter of law. Rambo v. Walker, 96-2538, p. 4 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966 A(2); Rambo, 704 So.2d at 32.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966 C(2).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo, 704 So.2d at 32-33.

APPLICATION OF THE "LEARNED INTERMEDIARY" DOCTRINE
The Calhouns assert that Toradol is unreasonably dangerous because Hoffman did not provide an adequate warning of the risk of renal failure from the use of Toradol. A drug manufacturer's duty has been stated as follows:
The manufacturer of a prescription drug has the obligation to inform the prescribing physician of any potentially adverse side effects or risks from the drug's use....
The manufacturer has no duty to warn the consumer directly of any risks or contraindications associated with the drug. The manufacturer of the drug has fulfilled its obligation when it has informed the prescribing and treating physicians of the risks of harm from the drug so that they may intelligently decide on its use and advise the patient. The doctor acts as an informed intermediary. The decision to use the drug in a particular circumstance rests with the doctor and the patient, not with the manufacturer.
Cobb v. Syntex Laboratories, Inc., 444 So.2d 203, 205 (La.App. 1st Cir.1983) (citations omitted).
The jurisprudence has treated the adequacy of a warning as a legal issue and thus, determined whether a particular warning was adequate as a matter of law. See Kinney v. Hutchinson, 468 So.2d 714, 716-18 (La.App. 5th Cir.), writ denied, 472 So.2d 35 (La.1985); Anderson v. McNeilab, Inc., 831 F.2d 92, 93 (5th Cir.1987); and Bealer v. Hoffman-La Roche, Inc., 729 F.Supp. 43, 44-45 (E.D.La.1990). Thus, the adequacy of warnings becomes a question of law where the warning is "accurate, clear, and unambiguous." Bealer, 729 F.Supp. at 44.
In the present case, the package insert for Toradol clearly and unambiguously warned that acute renal failure was a possible reaction to the use of Toradol. We reject the Calhouns' contention that this warning was inadequate because it did not state that acute renal failure could result from a single dose of Toradol. We recognize that the insert cautioned that Toradol should be used with caution in patients with impaired renal function, and that patients with underlying renal insufficiency were at an increased risk of developing acute renal failure. However, the statement in the warning that "there have been reports of acute renal failure" with the use of Toradol was unqualified and certainly not restricted to patients with impaired renal function or underlying renal insufficiency. *62 Therefore, we find, as a matter of law, that the warning as stated was adequate.
In so holding, we also reject the Calhouns' argument that an issue of fact is created when a prescribing physician, who admittedly is in possession of the product insert and PDR that warn about the risk of renal failure from the use of Toradol, states that he was not aware of this risk. The Calhouns have not cited us to, nor have we found, any jurisprudential support for their contention that the test of whether a warning is adequate is subjective, based solely on the opinion of the prescribing physician.
Finally, we note that the Calhouns alleged in their petition that Toradol was unreasonably dangerous in design, composition or construction, and for nonconformance with an express warranty. At trial, the Calhouns would bear the burden of proving these allegations. Hoffman, in its motion for summary judgment, pointed out to the trial court that the Calhouns had no evidence to support these other allegations. In accordance with LSA-C.C.P. art. 966 C(2), once Hoffman raised issue with the lack of factual support for these allegations, the burden shifted to the Calhouns to come forth with factual evidence sufficient to establish that they would be able to satisfy their evidentiary burden of proof on these allegations at trial.
In response to Hoffman's motion for summary judgment, the Calhouns produced the affidavit of Dr. Graffagnino, wherein he opined that Toradol was unreasonably dangerous in design because other drugs were capable of preventing Mr. Calhoun's injuries, and unreasonably dangerous in composition because it did not meet the performance standards for the product as he was told it would through Hoffman's literature and drug representative. The Calhouns did not submit any other evidence to support these allegations.
Louisiana Code of Civil Procedure article 966 allows the use of affidavits to support or oppose a motion for summary judgment. However, these affidavits shall be made on personal knowledge. LSA-C.C.P. art. 967. While facts recorded by an expert through personal observation or examination may be admissible for purposes of summary judgment, the opinions and beliefs of an expert, even though derived from personal observation or examination and based upon specialized training or experience, are not the type of personal knowledge contemplated by LSA-C.C.P. art. 967 and may not be used to support or oppose summary judgment. See Robertson v. Northshore Regional Medical Center, 97-2068, p. 6 (La.App. 1st Cir.9/25/98), 723 So.2d 460, 464. Therefore, we find that it is not proper to consider Dr. Graffagnino's opinion, presented in the form of an affidavit, of whether Toradol is unreasonably dangerous. Other than the opinion contained in the affidavit, the Calhouns have not provided any factual evidence to show they can satisfy their burden of proof at trial on these allegations of an unreasonably dangerous product. Accordingly, they have not met the burden imposed upon them by LSA-C.C.P. art. 966 C(2).

CONCLUSION
For these reasons, we find that the trial court properly granted Hoffman's motion for summary judgment. The judgment of the trial court in favor of Hoffman and against the Calhouns is affirmed. Costs of the appeal are assessed to the Calhouns.
AFFIRMED.
PETTIGREW, J., concurs.

ON REHEARING
PER CURIAM.
We grant this rehearing for the limited purpose of reassessment in light of the Louisiana Supreme Court decision in Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, handed down during the rehearing delays of our original decision.
*63 In our original opinion, we found that the plaintiffs' claims that the product was unreasonably dangerous in design, composition and construction and for nonconformance with an express warranty were unsupported by factual evidence. Because the only evidence to support these claims was in the form of an affidavit containing an expert's opinion testimony, we found that the plaintiffs could not satisfy their burden of proof at trial on these allegations, and summary judgment was properly granted in favor of defendant. In so ruling, we relied upon jurisprudence from this circuit that opinions and beliefs of an expert, though derived from personal observation or examination and based upon specialized training or experience, are not the type of personal knowledge contemplated by LSA-C.C.P. art. 967 and may not be used to support or oppose a motion for summary judgment. Robertson v. Northshore Regional Medical Center, 97-2068, p.6 (La.App. 1st Cir.9/25/98), 723 So.2d 460. However, after our original decision was handed down, the Louisiana Supreme Court rendered a decision that is contrary to, and thus indirectly overrules, the premise set forth in Robertson. See Independent Fire, 99-2181 and 99-2257, 755 So.2d at 237.
Pursuant to the supreme court's decision in Independent Fire, expert opinion evidence at the summary judgment stage should not be automatically excluded. Independent Fire, 99-2181, 99-2257, 755 So.2d at 235. Rather, the trial judge should consider the standards set forth in the United States Supreme Court case of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), in deciding whether expert opinion testimony is admissible at the summary judgment stage. Independent Fire, 99-2181, 99-2257, 755 So.2d at 234-35. Under Daubert, the test is not whether the testimony is based on personal knowledge, but "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Independent Fire, 99-2181, 99-2257, 755 So.2d at 234, quoting Daubert, 509 U.S. at 592, 113 S.Ct. 2786. This entails "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Independent Fire, 99-2181, 99-2257, 755 So.2d at 234, quoting Daubert, 509 U.S. at 592-93, 113 S.Ct. 2786. In fulfilling its gatekeeping role, the trial court should determine whether or not the technique had been subjected to peer review and/or publication, the "known or potential rate of error," the existence of "standards controlling the technique's operation," the technique's "refutability" or testability, and an incorporation of the Frye[1] general acceptance in the scientific community as only a factor in the analysis. Independent Fire, 99-2181, 99-2257, 755 So.2d at 234, n.3, citing Daubert, 509 U.S. at 593-94, 113 S.Ct. 2786.
Additionally, the Louisiana Supreme Court set forth several important underlying principles that must be considered by the trial court in applying the Daubert-Foret[2] standards to determine whether expert opinion evidence should be considered at the summary judgment stage. These principles are as follows:
The first is that the trial judge cannot make credibility determinations on a motion for summary judgment. Second, the court must not attempt to evaluate the persuasiveness of competing scientific studies. In performing its gatekeeping analysis at the summary judgment stage, the court must "focus solely on *64 the principles and methodology, not on the conclusions they generate." Third, the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion." Fourth, and most importantly, summary judgments deprive the litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert-Foret and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial judge should deny the motion and let the issue be decided at trial.
Independent Fire, 99-2181, 99-2257, 755 So.2d at 235-36 (citations omitted).
Of particular importance to the present case, the United States Supreme Court in Daubert stated: "in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free ... to grant summary judgment...." 509 U.S. at 594-95, 113 S.Ct. 2786.
In the present case, the only evidence the Calhouns had to support their claims that Toradol was unreasonably dangerous in design, composition or construction, and for nonconformance with an express warranty, was contained in the affidavit of the treating and prescribing physician, Dr. Graffagnino. According to Dr. Graffagnino, Toradol was unreasonably dangerous in design because other drugs were capable of preventing Mr. Calhoun's injuries, and it was unreasonably dangerous in composition because it did not meet the performance standards for the product as he was told it would through Hoffman's literature and drug representative. There was no opinion given by Dr. Graffagnino on how the product was unreasonably dangerous in construction or for the failure to conform to an express warranty.
Applying the standards enunciated in Daubert and adopted by the Louisiana Supreme Court in Independent Fire, we find that the evidence set forth by Dr. Graffagnino in his affidavit is insufficient to defeat Hoffman's motion for summary judgment.
With respect to the unreasonably dangerous in design claim, Dr. Graffagnino merely concluded other drugs were capable of preventing the injuries to Mr. Calhoun. He did not identify these alleged other drugs, nor did Graffagnino explain how he arrived at the conclusion that these other drugs would have prevented the injuries to Mr. Calhoun. With respect to the unreasonably dangerous in composition claim, Dr. Graffignino relied on the product literature and unidentified representations from the drug representative to arrive at his conclusion. Dr. Graffagnino did not set forth the performance standards for the product that the Hoffman drug representative purportedly told him about or that were purportedly contained in the product literature. Thus, we find that this scintilla of conclusory evidence on the issues of whether Toradol was unreasonably dangerous in design or composition, is insufficient to allow a reasonable juror to conclude that the statements are more likely than not true. See Daubert, 509 U.S. at 594-95, 113 S.Ct. 2786. See also Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir.1993), cert. denied, 511 U.S. 1126, 114 S.Ct. 2133, 128 L.Ed.2d 863 (1994) ("[w]here an expert presents `nothing but conclusionsno facts, no hint of an inferential process, no discussion of hypotheses considered and rejected', such testimony will be insufficient to defeat a motion for summary judgment").
For these reasons and after reconsideration of the Calhouns' arguments in light of *65 the Louisiana Supreme Court decision in Independent Fire, we again affirm the judgment of the trial court at the Calhouns' costs.
REHEARING GRANTED; AFFIRMED.
PETTIGREW, J., Concurs in part, dissents in part, and assigns reasons.
PETTIGREW, J., concurring in part, and dissenting in part.
I agree with the majority that a rehearing was warranted in this case. However, I respectfully dissent from the majority opinion that affirms the trial court's granting of summary judgment in favor of the defendant, Hoffman-La Roche, Inc.
In light of the recent decision by the Louisiana Supreme Court in Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257 (La.2/29/00) 755 So.2d 226, I believe the affidavit of Dr. Graffagnino raised sufficient issues of material fact that necessitate a trial on the merits. I would reverse the granting of summary judgment in favor of the defendant and remand the matter to the trial court for further proceedings.
NOTES
[1] Under this doctrine, the doctor acts as an informed intermediary, and the decision to use a drug in a particular circumstance rests with the doctor and the patient, not the drug manufacturer. Thus, a drug manufacturer's obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient. Mikell v. Hoffman-LaRoche, Inc., 94-0242, pp. 7-8 (La.App. 1st Cir.12/22/94), 649 So.2d 75, 79-80.
[1] Frye v. U.S., 54 App.D.C. 46, 293 F. 1013 (1923).
[2] State v. Foret, 628 So.2d 1116 (La.1993) (wherein the Louisiana Supreme Court adopted the Daubert standards as those to be utilized by Louisiana courts in considering whether expert opinion testimony will be admissible at trial).