834 So.2d 456 (2002)
PCS NITROGEN FERTILIZER, L.P. (F/K/A Arcadian Fertilizer, L.P.)
v.
U.S. FILTER/ARROWHEAD, INC., Successor-in-Interest to Arrowhead Industrial Water, Inc. & Commerce and Industry Insurance Company
No. 2001 CA 2577.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
Rehearing Denied December 19, 2002.
Joell M. Keller, William J. Hamlin, New Orleans, Counsel for Plaintiff/Appellant PCA Nitrogen Fertilizer, L.P.
Nathan L. Schrantz, Robert I. Siegel, New Orleans, Counsel for Defendant/Appellee Commerce and Industry Ins. Co.
*457 Before: KUHN, DOWNING, and GAIDRY, JJ.
KUHN, J.
Plaintiff-appellant, PCS Nitrogen Fertilizer, L.P. formerly known as Arcadian Fertilizer, L.P. (PCS), appeals the trial court's grant of summary judgment concluding the commercial general liability (CGL) policy issued by defendant-appellee, Commerce and Industry Insurance Company (Commerce), to insured, U.S. Filter/Arrowhead, Inc. successor-in-interest to Arrowhead Industries Water, Inc. (Arrowhead), does not provide coverage for PCS's claims. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL HISTORY
PCS filed this lawsuit naming as defendants, Arrowhead and its CGL insurer, Commerce. According to the allegations of the petition, a purified water supply was critical to PCS's operations. In March 1994, PCS entered into a Water Services Agreement, which required Arrowhead to design, install, and service a water purification system in accordance with stipulated specifications. PCS avers that in July 1998, Arrowhead failed to provide a water supply in conformity with the contractual specifications, thereby breaching the Water Services Agreement and forcing PCS to shut down operations. The petition further claims that after Arrowhead was apprised of the adverse situation, the problem was corrected. The petition maintains that as a result of the shutdown in operations, PCS incurred maintenance and start-up costs, as well as the time and value of lost production.
Commerce answered PCS's lawsuit, asserting that the policy issued to Arrowhead does not provide coverage for the asserted claims.[1] Commerce then filed a motion for summary judgment seeking dismissal from this lawsuit. After a hearing, the trial court granted the motion for summary judgment. And after expressly determining that the grant of summary judgment in favor of Commerce disposed of all issues between PCS and Commerce, the trial court designated the grant of summary judgment as final.[2] This timely appeal by PCS followed.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. Calhoun v. Hoffman-La Roche, Inc., 98-2770, p. 4 (La.App. 1st Cir.2/18/00), 768 So.2d 57, 60, writ denied, XXXX-XXXX (La.6/23/00), 765 So.2d 1041. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966A(2). After adequate discovery, or after a case is set for trial, a motion that shows there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law, shall be granted. La. C.C.P. art. 966C(1). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof *458 at trial on the issue that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense; but, rather, to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966C(2).
Appellate courts review summary judgments de novo under the same criteria that govern the trial judge's consideration of whether a summary judgment is appropriate. Robertson v. Northshore Regional Medical Center, 97-2068, p. 5 (La.App. 1st Cir.9/25/98), 723 So.2d 460, 463. Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment. Sanchez v. Callegan, 99-0137 (La.App. 1st Cir.2/18/00), 753 So.2d 403, 405.

DISCUSSION
The CGL policy issued to Arrowhead provides as follows:
We will pay those sums that the insured becomes legally obligated to pay as damages because of ... property damage to which this insurance applies.
* * *
This insurance applies to ... property damage only if:
(1) The ... property damage is caused by an occurrence ....
The policy defines "property damage" as:
a. Physical injury to tangible property including resulting loss of use of that property....
b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.
In this CGL policy "occurrence" means "an accident including continuous or repeated exposure to substantially the same general harmful conditions."
Insofar as the relevant exclusionary provisions, the Commerce's CGL policy issued to Arrowhead states:
This insurance does not apply to:
m. Damage to Impaired Property or Property Not Physically Injured
Property damage to impaired property or property that has not been physically injured arising out of:
* * *
A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use.
Commerce asserts that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that the property has not been physically injured arising out of Arrowhead's failure to perform in accordance with the terms of the Water Services Agreement. Thus, Commerce maintains, under exclusion m of the policy, it is entitled to judgment as a matter of law. We agree.
Under this exclusion, if an insured agrees to furnish equipment essential to the plaintiff's manufacturing process, there is no coverage for the plaintiff's loss of use *459 arising out to the insured's failure to perform the contract timely. Likewise, there is no coverage if the insured furnished the equipment timely, but the plaintiff suffered damages for loss of use because the equipment failed to operate. See William Shelby McKenzie and H. Alston Johnson III, Louisiana Civil Law Treatise: Insurance Law and Practice 410 (1996). This exclusion excludes from the policy's coverage damage to property that has not been physically injured or for which the claimed damages are only for loss of use of that property. See Gaylord v. ProPump, Inc., 98-2367, p. 8 (La.App. 1st Cir.2/18/00), 753 So.2d 349, 355.
On the showing made, the undisputed facts show that only damages associated with PCS's loss of use are claimed. And, importantly, PCS's petition urges only that Arrowhead failed to fulfill its contractual obligation to furnish a water supply in conformity with the contractual specifications set forth in the Water Services Agreement, specifically averring that it is the breach of contract by Arrowhead that gives rise to the claim for damages. Thus, assuming as true the allegations of its petition, the undisputed facts show that PCS suffered damages for loss of use because the water purification system failed to operate in accordance with the specifications set forth in the Water Services Agreement. With introduction of the insurance policy and the Water Services Agreement, Commerce has sustained its burden of showing no genuine issue of material fact and, therefore, its entitlement to summary judgment.
PCS asserts that exclusion m is ambiguous, suggesting that reference to "physical injury" in the exception to exclusion m for "the loss of use of other property arising out of sudden and accidental physical injury to" the insured's product or work after it has been put to its intended use is not defined within the policy. And PCS urges that "any damages based on actual `physical injury' to PCS's plant, equipment, or other property would [therefore] presumably not be excluded under this provision."
But according to the undisputed facts established in this motion for summary judgment, PCS's claim is not for damages for physical damage to its plant, equipment and other property arising out of sudden and accidental physical injury to Arrowhead's water supply. See and compare Gaylord, 98-2367 at p. 8, 753 So.2d at 355 (holding that damages sustained by plaintiff-manufacturer based on actual physical injury to manufacturer's plant, equipment, or other property fell within the ambit of the identically-worded exception and therefore were not excluded under an identically-worded exclusion m of a CGL policy issued to defendant-insured, who had provided faulty equipment to plaintiff). And while PCS correctly points out that the term "physical injury" is not defined in the CGL policy issued to Arrowhead, words of a contract must be given their generally prevailing meaning. See La. C.C. art.2047. According to Webster's International Dictionary 1706, 1164 (3rd ed.1993), "physical" is "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"; and "injury" means "an act that damages, harms, or hurts." We find exclusion m and its exception are unambiguous. Applying the generally prevailing meaning of the provisions setting forth the exception to exclusion m, we conclude the policy unambiguously provides coverage for loss of use to other property arising out of sudden and accidental physical injury to Arrowhead's water supply after the water purification system was put to its *460 intended use.[3]
On the showing made, we find no outstanding issue of material fact on the applicability of the exclusion to the CGL policy issued by Commerce to Arrowhead, which excludes from coverage property damage to property that has not been physically injured arising out of a failure by the insured to perform a contract or agreement in accordance with its terms. Because Commerce has sustained its burden of proving the policy unambiguously excludes coverage, PCS's claims for loss of use, associated with a breach of the Water Services Agreement by Commerce's insured, Arrowhead, are correctly dismissed.[4]

DECREE
The trial court's judgment granting summary judgment in favor of Commerce and Industry Insurance Company is affirmed. All costs of this appeal are assessed against PCS Nitrogen Fertilizer, L.P. formerly known as Arcadian Fertilizer, L.P.
AFFIRMED.
NOTES
[1] Arrowhead, who did not participate in this appeal, answered PCS's lawsuit separately and has asserted no claims against its CGL insurer at this stage of the proceedings.
[2] See La. C.C.P. art.1915.
[3] Because we find the policy unambiguously excludes PCS's claim, which is solely for loss of use damages, we pretermit discussions on the issues of whether this breach of contract claim constitutes an "occurrence" under the policy as well as whether the contractual liability exclusion applies under the undisputed facts of this case.
[4] PCS appears to assert that its status as an additional insured under Arrowhead's CGL policy triggers application of the exception to exclusion m. But according to the policy's terms, Commerce pays only those sums for which an insured become legally obligated to pay as damages. Because this action is a third party claim under the coverage, and not a first-party claim by an insured, we find the additional insured status is of no moment in this case.