569 So.2d 1307 (1990)
Daniel W. REAVES, Appellant,
v.
ARMSTRONG WORLD INDUSTRIES, INC., et al., Appellees.
No. 89-2289.
District Court of Appeal of Florida, Fourth District.
October 31, 1990.
Rehearing and Certification Denied December 10, 1990.
Brent M. Rosenthal of Baron & Budd, P.C., Dallas, Tex. and Louis S. Robles, Miami, for appellant.
Louise H. McMurray, Miami and Blaire & Cole, P.A., Coral Gables, for appellee Eagle-Picher Industries, Inc.
James E. Tribble and Kathleen M. Salyer of Blackwell & Walker, P.A., Miami, for appellee Owens-Corning Fiberglas, Inc.
Steven R. Berger of Wolpe, Leibowitz, Berger & Brotman, Miami, for appellee Colotex Corp.
*1308 PER CURIAM.
This is an appeal from an order of final judgment setting aside a jury verdict for the plaintiff, directing a verdict and judgment in favor of the defendants, and alternatively granting a new trial in a personal injury action for damages arising out of alleged occupational exposure to asbestos products. Because there is no evidence in the record upon which the jury could properly rely in finding a verdict for the plaintiff, Collins v. School Board of Broward County, 471 So.2d 560, 563 (Fla. 4th DCA 1985), we affirm the final judgment on directed verdict, and as a basis therefor we adopt and approve the trial court's reasoning as follows:
"Daniel Reaves, the plaintiff in this cause, is a 73 year old black male with very little education, unable to read and write, who had performed laboring work all his adult life. He retired voluntarily at age 62 in 1979. He filed suit against eighteen defendant companies who had manufactured, distributed or sold asbestos containing insulation products in the past. Only three of these companies remained as defendants at the time of trial, against whom a verdict was rendered. The verdict was $325,000.00, with a finding of 15% liability against Eagle-Picher Industries, Inc., 35% against Owens-Corning Fiberglas, Inc. and 50% against The Celotex Corporation.
"Pertinent work history were the years 1954-1961 when Reaves worked as a laborer clean up man doing janitorial type duties in the Monsanto plant near Pensacola, Florida. He was one of about 150-200 men sweeping and cleaning up the plant, including debris left by insulators tearing out old asbestos and installing new asbestos-containing insulation. More than 150 men were engaged on the maintenance crew performing this maintenance work. Plaintiff claims to have been exposed to asbestos while engaged in this clean up work.
"This plant was enormous. A fellow worker of plaintiff called it a `40 acre size building'. Several thousand people were employed in the manufacture of nylon and chemicals.
"Plaintiff was unable to identify the brand name or manufacturer of any of the asbestos products he claimed he was exposed to while working in the Monsanto plant. He left Monsanto in early 1961 to go to work at the Armstrong plant, where he continued to work for 18 years doing essentially the same type of clean up work for asbestos insulators.
"Henry Hudson, a fellow worker who worked in the maintenance section of Monsanto, testified he recognized plaintiff and "saw him on occasion" doing clean up work of asbestos litter left by maintenance crews doing overhaul work on machinery, but he did not indicate plaintiff ever worked with his clean up crew, nor did he testify that Reaves regularly cleaned up after Hudson or his maintenance group. Paul Garrison was an employee of an outside subcontractor who performed some insulation work at Monsanto. There was no evidence that Garrison knew or recognized the plaintiff. Garrison testified that the Monsanto laborers did not clean up debris for him or his coworkers.
"At trial, there were several asbestos-containing products identified. 1) Kaylo, manufactured by Owens-Corning, used by Hudson 1958  February 1961, used by Garrison August 1960  February 1961; 2) Careytemp, manufactured by Celotex' predecessor, Phillip Carey, used by Hudson and Garrison during the same time period; and 3) Hylo, sold by Eagle-Picher and used by Garrison August 1960  February 1961.
"This is not a suit against the asbestos industry at large. In short, if the plaintiff is to recover, he must establish by the greater weight of the evidence that his asbestos injuries were due to the negligence of those defendants. But before the negligence question can be reached, the plaintiff is required to show sufficient exposure to asbestos products sold or manufactured by the three named defendants.
"Hudson was one of 200 men engaged in the maintenance work of tearing out old insulation and installing new insulation in the `40 acre plant'. He worked with Kaylo pipe covering, Kaylo block, AA cloth, several asbestos-containing Johns-Manville cements *1309 and Careytemp. He also testified that there was used in the plant asbestos rope and fibrous adhesives manufactured by Raybestos, asbestos cloth and asbestos rope manufactured by H.K. Porter Co., Unibestos manufactured by Pittsburgh Corning, Aircell manufactured by Keene Corporation and Calcilite PC manufactured by GAF Corp. Garrison worked with Thermobestos, Careytemp, Johns-Manville pipecovering and cements, Kaylo and Hylo among others. The evidence was clear that asbestos products manufactured by the three remaining defendants were not the only asbestos products in this large plant. With 200 maintenance workers tearing out old insulation (where there was no testimony determining who was the manufacturer) and installing new insulation and 150-200 men engaged in the cleanup duties, it was certainly permissible for the jury to infer that the plaintiff was exposed to asbestos dust. However, the proof of whose asbestos dust and who manufactured those products was speculative at best. It is incumbent upon the plaintiff to establish by the greater weight of the evidence that the plaintiff was exposed to the asbestos products of each of the three remaining defendants and that this exposure contributed substantially to producing the injury complained of.
`The Plaintiff, in general has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the Court to direct a verdict for the defendant.'
Gooding v. University Hospital, 455 445 So.2d 1015 (Fla. 1984).
"The medical testimony on causation was presented by Dr. Horst Baier, a pulmonary physician who examined the plaintiff at the request of plaintiff's counsel. The doctor testified that every exposure to asbestos contributes to the plaintiff's abnormalities, but was unable to state whether or not, `but for' the exposure to asbestos during the three years 1958-1961, the injury would have been incurred. Conversely, he was unable to state within reasonable medical probability that the relevant three year period alone would have been sufficient to cause the injury. His only response in that regard was that `it is conceivable'. The equivocal demeanor of the doctor while testifying indicated to the Court that the witness was unwilling to state more than that. This testimony is insufficient, as a matter of law, to support a jury finding of proximate causation. Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA, 1983).
"The Court finds, as a matter of law, that the evidence presented by plaintiff at trial was insufficient to permit a liability verdict against the defendants. To render a liability verdict in this case, the jury necessarily and impermissibly stacked inferences upon inferences and speculated upon matters outside the evidence. This was improper.
`When circumstantial evidence is relied on in a civil case as a method of proof, any reasonable inference deducible therefrom which would authorize recovery must outweigh each and every contrary reasonable inference if the plaintiff is to prevail.
.....
[Stacking one inference upon another as a] method of establishing an ultimate fact should not ordinarily be indulged unless the first inference meets a test which may be analogized to the criminal rule concerning circumstantial evidence, ... only if the prior or basic inference is established to the exclusion of any other reasonable theory.'
Voelker v. Combined Ins. Co. of America, 73 So.2d 403 (Fla. 1954).
"The Court finds here, as a matter of law, that the inference of exposure to asbestos; as the basis for the inference of plaintiff's being in close proximity to Hudson and/or Garrison at the time they were using defendants' specific products; as the *1310 basis for the further inference that the negligence of these defendants in failing to place warning labels on packaging caused said exposure; as the basis for the ultimate proximate causation inference that Reaves would not have contracted asbestosis absent the negligence of these defendants, constitutes the type of compounding inference on inference prohibited under the case law of the State of Florida. Girdley Construction Co. v. Ohmstede, 465 So.2d 594 (Fla. 1st DCA 1985).
"The Court is cognizant of the line of Florida summary judgment cases, (Ward, Rubley, Vilardebo, etc.) which appear to hold that coworkers may be used to tie product identification to the plaintiff. These cases are not appropriate for reliance here, since in a summary judgment determination, the defendant has the burden of showing the nonexistence of factual issues which may be proved at trial. By the time of directed verdict motions at trial, the trier of fact is constrained by the evidence actually presented, not what might have been shown. The burden of proof imposed on a defendant at summary judgment is transferred to the plaintiff, who must prove by competent evidence at trial all elements of the cause of action. Even if these cases were the appropriate standard, the plaintiff Reaves has failed to produce sufficient competent evidence to meet even the required level of proof as detailed in those cases.
"Therefore, based upon the foregoing facts, law, and the Court's observation of the witnesses, documents and conduct of the trial, the Court finds that the Plaintiff failed to present a prima facia negligence case by competent proof. The motions of all defendants for judgment in accord with their previous motions for directed verdict are GRANTED. Judgment shall be and hereby is entered in favor of the defendants, Owens-Corning Fiberglas Corporation, Eagle-Picher Industries, Inc. and The Celotex Corporation and against the Plaintiff, Daniel Reaves. The Court reserves jurisdiction to assess costs at a later date."
Because we have determined that the trial court correctly entered final judgment on directed verdict in favor of defendants, it is not necessary to consider the alternative order granting a new trial. The final judgment is affirmed.
AFFIRMED.
DELL, WALDEN and GUNTHER, JJ., concur.