740 So.2d 560 (1999)
Eddie Easa FARAH, Appellant,
v.
Linda CANADA and Atlantic Coast Realty, Inc., etc., Appellees.
No. 97-3284.
District Court of Appeal of Florida, Fifth District.
May 7, 1999.
Rehearing Denied June 11, 1999.
T. Geoffrey Heekin and S. Hunter Malin of Bartlett & Heekin, P.A., Jacksonville, for Appellant.
Allen C.D. Scott, II of Scott & Scott, P.A., St. Augustine, for Appellees.
GOSHORN, J.
Eddie Easa Farah appeals from an amended final judgment entered against him pursuant to a jury verdict in a suit to recover a real estate commission. Farah raises numerous issues on appeal, one of which we find dispositive. We reverse.
In May 1995, Richard and Marie-France Falconer sold their oceanfront St. Johns County home to Farah and his brother, Chuck,[1] for $515,000. No brokers participated in the sale negotiations, although the Falconers had previously listed the property with Appellees Linda Canada and Atlantic Coast Realty, Inc. The instant dispute arose over the scope of that listing, whether it had been extended to the time when Farah and the Falconers engaged in dealings regarding the house, and whether Farah knew of the listing when he bought the house directly from the Falconers.
After Appellees found out that the house had been sold, they filed a complaint against the Falconers and Farah alleging breach of contract (against the Falconers only) and intentional interference with a business and contractual relationship. Jeff *561 Goodrich and Goodrich Companya broker and his agency whom Farah contacted to obtain information about the house were later added as plaintiffs.
The case proceeded to trial in September 1997. The testimony established that the Falconers had listed their house with Appellees for several consecutive six-month periods. The last contract signed by the Falconers listed the house from April 12, 1994 to October 12, 1994. Canada testified that in October 1994, Mrs. Falconer orally agreed to extend the listing for another six months, to April 12, 1995, and this listing date was reflected in the Multiple Listing Service (MLS) realtor book. However, Mrs. Falconer testified that she never orally extended the listing and that instead she sent Appellees a letter in October 1994 notifying them that the listing would not be renewed.
In February 1995, Farah called Jeff Goodrich to inquire as to whether the Falconers' house was still for sale; Farah was familiar with the area and had seen that the house was for sale some time earlier. Jeff looked up the listing in the MLS book, called Canada to set up a showing of the house, and scheduled an appointment for Sunday, February 12, 1995. When Canada called Mrs. Falconer to arrange the appointment, Mrs. Falconer insisted on knowing who the prospective purchaser was, and at Mrs. Falconer's request Canada looked up Farah's telephone number in the telephone book and gave it to Mrs. Falconer. Mrs. Falconer called Farah and told him that no broker was involved and to deal with her directly. Mrs. Falconer then called Canada and Goodrich and told them that Farah was not interested and that the appointment was off.
Farah viewed the house, and after his first offer went unanswered, he and the Falconers entered into a contract in March 1995 and closed the deal in May 1995, leading to the instant suit. Pursuant to the jury's verdict, the court entered a judgment awarding Appellees $41,532.12 (6% of $515,000, plus interest) against Farah and the Falconers. The Falconers did not appeal.
Farah argues that he cannot be held liable for interfering with the contract because there was no evidence to support a finding that he induced the Falconers to breach the agreement. We agree. "The elements of the tort of intentional interference [with a contract] are: 1) the contract; 2) the wrongdoer's knowledge thereof; 3) his intentional procurement of its breach; 4) the absence of justification; and 5) damages." American Med. Int'l, Inc. v. Scheller, 462 So.2d 1, 8 (Fla. 4th DCA 1984) (emphasis added). The third element was not established in this case.
In Cedar Hills Properties Corp. v. Eastern Federal Corp., 575 So.2d 673, 676 (Fla. 1st DCA 1991), the court noted that "[i]n order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract by `influencing, inducing or coercing one of the parties to... breach the contract, thereby causing injury to the other party.'" (quoting West v. Troelstrup, 367 So.2d 253, 255 (Fla. 1st DCA 1979)). See also McKinney-Green, Inc. v. Davis, 606 So.2d 393, 397 (Fla. 1st DCA 1992) ("The gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other."). Black's Law Dictionary defines "induce" as "[t]o bring on or about, to affect, cause, to influence to an act or course of conduct, lead by persuasion or reasoning, incite by motives, prevail on." Black's Law Dictionary 775 (6th ed.1990); see also 45 Am.Jur.2d Interference § 10 (1999) ("[I]n an action for procuring the breach of a contract, the defendant may not be held liable where it is found that the breach by the party to the contract rather then the persuasion by the defendant was the proximate cause of the plaintiff's damage.").
*562 Farah is correct that there is no evidence that he induced the Falconers to breach a listing agreement under the standards noted above. Mrs. Falconer testified that the first day when Farah came to see the house, she told him that she had a prior listing agreement but that it had expired, that there was no broker, and to deal directly with her. Farah testified likewise. This testimony is the only evidence of what transpired between Farah and the Falconers. It evidences Mrs. Falconer's predisposition to breach and precludes any finding that she was induced to breach by Farah. Accordingly, this case is reversed with instructions to enter a judgment absolving Farah of liability for the commission.
REVERSED and REMANDED with instructions.
DAUKSCH and ANTOON, JJ., concur.
NOTES
[1] Chuck is not a party to this appeal, nor was he a party below.